ANTONIO CANIZARES V. THE STATE.

No. 21644. Delivered October 15, 1941.
Rehearing Denied January 7, 1942.

The opinion states the case.

*H. J. Bernard* and *Percy Foreman,* both of Houston, for appellant.

*Dan W. Jackson,* Criminal District Attorney, and *Allie L. Peyton* and *Tod R. Adams,* Assistant Criminal District Attorneys, all of Houston, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of operating a gaming device called policy, and was awarded a sentence of three years in the penitentiary.

The testimony shows that this game was operated in Houston, Harris County, by means of the services of persons called "runners" who would sell policy tickets at various places throughout the city, sometime on the streets, keeping a copy

thereof, and the copies of such ticket being given over to one Leroy Gentry as head pick-up man, and twice a day this head pick-up man would contact a further person, who would at such time give out the winning numbers of the twice a day drawing, as well as other tickets to be sold for the next drawing. According to the State's testimony peace officers trailed appellant, and saw him make several contacts with this Leroy Gentry, and saw him receive from and pass to said Gentry paper bags similar to those Gentry had received from some of the policy runners. Appellant was then trailed to a certain place at 601 Colquitt Street, where he would enter a garage built against the house at such number. Appellant was seen to enter this garage more than once after having made contact with Leroy Gentry, and finally he was arrested, and he took the arresting officers to 601 Colquitt Street, and after entering the house by means of a door in the garage he there showed them the different paraphernalia that he said was used in the carrying out of this policy game, and demonstrated to them its use therein, and where these officers possessed themselves of such paraphernalia, and identified the same when offered in evidence in court. He also showed them certain bags and many tickets, some of which tickets were identified by State's witnesses as having been written and made out by the witnesses and delivered to the head pick-up man, Gentry. We set out an excerpt of the testimony of an officer witness as to what the appellant showed and told them after his arrest:

"This defendant made a statement to me and the other officers that led to the finding of equipment that I see in this court room. The information he gave us I found to be true. The statement that the defendant made at that time, in that connection, was he told us that the usual paraphernalia for printing policy tickets was in the house. We asked him what stuff, and he said a press and other stuff that goes along with it. After we went to the door he led us up to the room directly over this garage, where it was. He led us to the room. We entered that room. In the room we found a multigraph machine. We found that stand with four legs on it, and a motor at the bottom of it, and wheels and things, and an electric plug connected to it, in that room that this defendant pointed out to us. This other part, this machine with rollers on it, was in that room that we found the stand in. This other part, with some rollers and chains on it, was also in the same room at 601 Colquitt Street.

"At the time we first saw this machine it was assembled. The feeder, this instrument here, was on top of that, and the feeder was connected. The defendant, Canizares, helped the officers dismount the machine. He turned it over and showed us how it worked.

"While we were taking some of the stationery and stuff out of a closet adjoining this room, and some printer's ink, he claimed a little atomizer, or something that looked to me like an atomizer. He said he'd like to keep it; it was his personal property."

This case was one of circumstantial evidence, and so submitted to the jury, and the State was necessarily restricted to the different meetings of the man Gentry and appellant, the passage of bags, the trips to 601 Colquitt Street, and the possession of the appellant of a large amount of paraphernalia used in the game of policy, as well as the location in said house of some tickets which had been actually used in the playing of these particular games of policy.

We express the belief that the trial jury had the right to conclude from these circumstances, under the law of principals as laid down by the careful trial court, that appellant was acting together with others in keeping and maintaining this game of policy, and especially so in view of the fact that a small portion of this property, not used in the game, was declared by him to be his own personal property, evidencing his prior presence in such room and place.

The bills of exceptions are numerous and lengthy, and this opinion would be unduly prolonged did we attempt to write on each one. We will therefore only notice the main propositions presented in some of them.

Many of the bills complain of the introduction of much paraphernalia used in the game of policy and found in the house at 601 Colquitt Street. Under the proof herein we think all such material was admissible and a circumstance pointing towards appellant's guilt, and all bills relative thereto are overruled, as well as all bills relative to the testimony of the witnesses who attempted to explain to the jury how a policy game was conducted. This ruling should dispose of bills Nos. 1 to 24 inclusive.

We think that bills Nos. 25, 26 and 27 relative to Leroy Gentry having in his possession a paper bag was an admissible circumstance showing a portion of the procedure relied upon by the State to fasten a guilty connection of appellant with this offense.

Bills Nos. 28, 29, 30, 31 and 32 are overruled.

Bill No. 33 relates to the peace officer testifying relative to what was shown to him by appellant after he had been arrested on the charge herein. We think this testimony was admissible under Art. 727, C. C. P., a portion of which we quote:

"* * * or unless in connection with said confession he makes statements of facts or circumstances that are found to be true which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

It is noted that the officer testified that appellant told them the usual paraphernalia for running the policy game was in this house, and he led them to the same and showed them how such was used, and we find no denial of such statement in the record. We think the statement made by appellant conduced to establish his guilt by causing the officers to find the instruments with which the offense was committed. See Miller v. State, 68 S. W. (2d) 1036; Broz v. State, 245 S. W. 707.

There are other bills that relate to objections to the introduction of certain tickets, being the ones found in the place at 601 Colquitt Street, and some of which were identified by the runners, or solicitors of business, as having been made by them, a copy of which was given to the person who was playing at this game of policy, and who participated in the drawings. Many of these tickets were identified by the State's witnesses as in their handwriting, and as a part of the modus operandi of the policy game. It was also shown by the officers that these were a part of the paraphernalia shown to them by appellant. We think these tickets were admissible. True it is that some of these tickets were given at one time and some at another, but under the charge in the indictment for keeping and exhibiting a policy game this seems to have been a continuous offense, and a conviction could be had for any period within the statute of limitations.

There are also many other bills of exception contained in the record, all of which have been considered, and being of the opinion that no error is evidenced they will be overruled without further extending this opinion.

Finding no error in the record, the judgment will be affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The motion for rehearing in this case ably presents grounds which were considered by this court on original submission. We do not think that the evidence of some witness loosely using the word "lottery" when he had, in fact, described a policy game would require that the court submit to the jury the issue as to whether or not the appellant was operating a lottery. Analysis of the language clearly shows that the witness did not intend to contradict the conclusion which others had positively testified to. The close similarity between a policy game and a lottery is easily confusing and it is but natural that some witnesses should reach a conclusion that the operation did constitute a lottery. However, the evidence given indicates the contrary, and their conclusion would not support a finding that it was a lottery; hence, there is no requirement that the issue be submitted to the jury. It is true that the record reflects that Canizares was carried to the scene where the printing machine was found by the officers, but he there told them where the machine was and showed them how to find it. The opinion was not in error when the entire details are considered.

The harm imputed to the argument of counsel in this particular case is fanciful. It is not a statement of new facts to the jury, but is rather an erroneous statement of the facts which were in evidence. The jury had it all before them and could easily understand the error which the attorney made in quoting it. There was nothing inflammatory about it, no new facts presented and no occasion for the jury being misled by reason of it.

We think that the original opinion correctly and full disposed of all issues in the case. The motion for rehearing is overruled.